UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID HAKIM, | |
| Plaintiff, | No. 15 C 6487 |
| v. | Judge Thomas M. Durkin |
| SAFARILAND, LLC & DEFENSE TECHNOLOGY CORPORATION OF AMERICA, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Former DuPage County SWAT team member David Hakim brings this action against defendants Safariland, LLC and Defense Technology Corporation (together "Safariland") for injuries he sustained from an allegedly defective shotgun shell made for door breaching.[1] Safariland moved for summary judgment on Hakim's strict product liability and negligence claims. For the following reasons, Safariland's motion [R. 93] is granted in part and denied in part.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most

---

[1] Defense Technology Corporation merged with Safariland in 2009 and no longer exists as a separate entity. R.93-1 ¶ 1. The Court will refer to the two together here.

1

favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Background

Safariland Def-Tech TKO Breaching Rounds are translucent shotgun shells loaded with compressed zinc powder. 103-12 ¶ 11.[2] The breaching rounds are most widely used as a method to breach door locks, hinges, dead bolts, or safety chains for entry by law enforcement during tactical operations. *Id.* Upon impact with the target, the breaching rounds are designed to disintegrate into a fine powder. *Id.*

Plaintiff David Hakim is a former member of the DuPage County SWAT team. R. 93-1 ¶ 3. On December 11, 2014, Officer Patrick O'Neil led the SWAT team in door-breaching training at an abandoned residence in Hinsdale, Illinois. *Id.* ¶¶ 4-5, 7. Following O'Neil's demonstration, SWAT team officers were divided into groups to practice the shotgun-breaching technique in both the basement and on the first floor

---

[2] As Safariland did not respond to Hakim's Statement of Additional Facts, those facts are deemed admitted for the purposes of this motion. *See LCCS Grp. v. Lenz Oil Serv. Peoria, Inc.*, 2018 WL 1961133, at *1 (N.D. Ill. Apr. 26, 2018); *Local 705 Int'l Bhd. of Teamsters Pension Fund v. Marina Cartage, Inc.*, 2019 WL 527575, at *1 n.1 (N.D. Ill. Feb. 11, 2019). Citations are only to Safariland's Statement of Material Facts if they are admitted by Hakim.

of the house. *Id.* ¶ 6. O'Neil did not know until after he finished his demonstration that the officers would be performing live breaching. *Id.* ¶ 19; R. 102 ¶ 19. When O'Neil learned of this fact, he told the commanding officer that the trainees should learn on a flat range before breaching in the home. R. 93-1 ¶ 22. The commanding officer still allowed the officers to proceed with the training. R. 103-1 at 76:22-77:1.

During the breaching practice, Hakim was positioned on the first floor of the house. R. 93-1 ¶ 8. Meanwhile, Officer Andy Alaniz was practicing shotgun-breaching in the basement with O'Neil using the TKO breaching rounds. *Id.* ¶¶ 9, 10. Alaniz had no experience with shotgun breaching prior to the training. *Id.* ¶ 24. O'Neil instructed Alaniz to keep the shotgun reasonably parallel to the floor and shoot straight between the hinge pin and the door. *Id.* ¶ 25. Alaniz then fired multiple shots directed at the hinge. *Id.* ¶ 10. One of the fired rounds traveled through the basement ceiling and first-floor floorboard, struck the back-bottom edge of Hakim's body armor, dented the armor, deflected at a downward angle and lodged into Hakim's spine. *Id.* ¶ 11.

At least one SWAT team member said that there were rounds "all over the place" that did not disintegrate on the day in question. R. 103 ¶ 21. Hakim and Safariland dispute whether the surface must be metal for disintegration to occur, and if it does, whether this fact was communicated to law enforcement officials and Hakim. *See id.* ¶ 34; R. 93-1 ¶ 38. They also dispute whether the round fired by Alaniz that hit Hakim ever hit the metal hinge of the door before traveling through the floorboard. R. 102 ¶ 10.

3

Safariland moved for summary judgment on Hakim's strict liability and negligence claims for manufacturing defect, design defect, and failure to warn.

## Analysis

I. Strict Liability (Counts I-III)

A strict liability claim may proceed under three theories: manufacturing defect, design defect, and failure to warn. *Mikolajczyk v. Ford Motor Co.*, 901 N.E.2d 329, 348 (Ill. 2008), *opinion modified on denial of reh'g* (Dec. 18, 2008). Hakim alleges all three. Each is addressed in turn.

a) Manufacturing Defect (Count I) and Design Defect (Count II)

A manufacturing defect "occurs when one unit in a product line is defective, whereas a design defect occurs when the specific unit conforms to the intended design but the intended design itself renders the product unreasonably dangerous." *Salerno v. Innovative Surveillance Tech., Inc.*, 932 N.E.2d 101, 108 (Ill. App. Ct. 2010) (citing *Blue v. Environmental Engineering, Inc.*, 828 N.E.2d 1128, 1137 (Ill. 2005)). Under both a manufacturing defect and a design defect theory, a plaintiff must allege: "(1) a condition of the product that results from manufacturing or design; (2) the condition made the product unreasonably dangerous; (3) the condition existed at the time the product left the defendant's control; (4) the plaintiff suffered an injury; and (5) the injury was proximately caused by the condition." *Id.* at 109 (citing *Mikolajczyk*, 901 N.E.2d at 345).

A plaintiff may demonstrate that a product is unreasonably dangerous by using either the consumer-expectation test or the risk-utility test. *Mikolajczyk*, 901

N.E.2d at 348. Under the consumer-expectation test, a plaintiff must prove that the product "is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249, 254 (Ill. 2007) (quoting Restatement (Second) of Torts § 402A cmt. i (1965)). "This is an objective standard based on the average, normal, or ordinary expectations of the reasonable person; it is not dependent upon the subjective expectation of a particular consumer or user." *Id.* at 256.

Under the risk-utility test, a plaintiff may demonstrate a design defect "by presenting evidence that the risk of danger inherent in the challenged design outweighs the benefits of such design." *Calles*, 864 N.E.2d at 255. Factors that courts consider in their risk-utility analysis include the availability and feasibility of alternative designs; conformity with industry standards, voluntary organization guidelines, and governmental regulation; the utility of the product; the safety aspects of the product; and the manufacturer's ability to eliminate unsafe characteristics of the product without impairing its usefulness or making it prohibitively expensive. *Id.* at 263-64; *Jablonski v. Ford Motor Co.*, 955 N.E.2d 1138, 1154 (Ill. 2011). When there is enough evidence to implicate both tests, consumer expectation becomes one factor in the risk-utility analysis, and the risk-utility test is applied by the fact finder. *Mikolajczyk*, 901 N.E.2d at 360, 363.

Although Safariland nominally moves for summary judgment on all counts, it does not address the consumer-expectation test, which is the governing standard for

5

strict liability manufacturing defect claims. *See Salerno*, 932 N.E.2d at 109 ("When proceeding under a manufacturing defect theory, we apply the consumer-expectation test to determine whether the product is unreasonably dangerous."). And while Hakim has not provided direct evidence of a specific defect in the breaching round, this is not fatal to his claim. *See DiCosolo v. Janssen Pharm., Inc.*, 951 N.E.2d 1238, 1244 (Ill. App. Ct. 2011) (stating that "Illinois courts have acknowledged that the unavailability of the product does not preclude a plaintiff from proving that a product was defective through circumstantial evidence" and collecting cases to this effect). Because Safariland has not raised any arguments addressing Hakim's strict liability manufacturing defect claim, to the extent it moves for summary judgment on this count, the motion is denied.

Turning to strict liability design defect, Safariland argues that summary judgment is proper because Hakim did not establish that an alternative design was available or that the breaching rounds failed to conform with industry standards. The Illinois Supreme Court has rejected this exact argument. *See Mikolajczyk*. 901 N.E.2d at 354 ("Plaintiff is not required to utilize the risk-utility method of proof and does not have a 'burden' of proving the existence of a feasible alternative design.").

Rather than pursuing a risk-utility method of proof, under which alternative design is a factor, Hakim is proceeding under the consumer-expectation test. R. 104 at 5. The single question for the jury under the consumer-expectation test is "whether the product is unsafe when put to a use that is reasonably foreseeable considering its nature and function." *Mikolajczyk*, 901 N.E.2d at 352. While risk-utility "trumps"

6

consumer-expectation when the two tests yield conflicting results, *Ferraro v. Hewlett-Packard Co.*, 721 F.3d 842 (7th Cir. 2013), neither party has pointed the Court to evidence that implicates the risk-utility test.

Thus, the question is whether the breaching round that injured Hakim failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner. The ordinary consumers of breaching rounds are law enforcement agencies and officers. Law enforcement agencies purchase the dissolving breaching rounds – and officers use them – at least in part to minimize the risk of harm to people who may be on the other side of the door. It would defeat the very purpose of purchasing dissolving rounds if they did not dissolve upon striking a metal door hinge. Hakim has produced both expert and eyewitness testimony to support that the breaching round did not disintegrate when Alaniz hit the metal hinge, but instead bounced off the hinge, traveled through the floorboard, and hit Hakim.

It is unclear whether Hakim seeks to proceed under a manufacturing defect or design defect theory at trial (or both). But he has produced enough evidence for a reasonable jury to find that the breaching round failed to perform as safely as an ordinary consumer would expect. Safariland's motion for summary judgment on Counts I and II is denied.

   b) Failure to Warn (Count III)

Safariland also moves for summary judgment on Hakim's strict liability claim for failure to warn. Under a failure to warn theory, "a plaintiff must demonstrate that

the manufacturer did not disclose an unreasonably dangerous condition or instruct on the proper use of the product as to which the average consumer would not be aware." *Salerno*, 932 N.E.2d at 109 (citing *Sollami v. Eaton*, 772 N.E.2d 215, 219 (Ill. 2002)). The warning's purpose "is to inform the consumer about a danger of which [he] is not aware, thus enabling [him] to take appropriate measures to protect [himself]." *Winkler v. Madix, Inc.*, 2018 WL 4286197, *9 (N.D. Ill. Sept. 7, 2018) (citing *McColgan v. Envtl. Control Sys., Inc.*, 571 N.E.2d 815, 818 (Ill. App. Ct. 1991)). "A manufacturer need warn only of dangers of which it knows or should know." *Apperson v. E.I. du Pont de Nemours & Co.*, 41 F.3d 1103, 1107 (7th Cir. 1994); *see also Sollami*, 772 N.E.2d at 219 ("A manufacturer has a duty to warn where the product possesses dangerous propensities and there is unequal knowledge with respect to the risk of harm, and the manufacturer, possessed of such knowledge, knows or should know that harm may occur absent a warning."). However, no duty to warn exists if the danger is apparent or open and obvious. *Sollami*, 772 N.E.2d at 219.

In an apparent attempt to argue that the danger of firing breaching rounds is open and obvious, Safariland maintains that Hakim is an experienced law enforcement officer who knew the rounds could cause serious injury. R. 90-1 at 7. But whether Safariland failed to warn that it is dangerous to shoot breaching rounds is not Hakim's claim. Rather, Hakim alleges that Safariland failed to adequately warn that its TKO breaching rounds only disintegrate upon hitting metal (as opposed to any hard surface).

8

The adequacy of a warning is typically a question for the jury. *Hernandez v. Schering Corp.*, 958 N.E.2d 447, 455 (Ill. App. Ct. 2011). However, Safariland argues that summary judgment is still proper because Hakim has provided "no evidence of what warnings Safariland gives when selling" the breaching rounds. R. 90-1 at 8. Not so. Hakim produced an FAQ for the TKO breaching rounds published by Defense Technology that describes the rounds as "frangible," and states that "[w]hen the slug hits a hard surface it disintegrates into a fine powder." R.103-17 at 2. Nowhere does the FAQ mention that the breaching rounds must hit metal to disintegrate. Moreover, both parties' experts acknowledged that they have not seen literature or warnings to this effect. R. 103 ¶¶ 34-35. Hakim and at least one other DuPage County SWAT team member also testified that they believed the breaching rounds disintegrated after striking any hard surface. *Id.* ¶ 7; R. 102-2 at 237:3-10. For its part, Safariland did not direct the Court to a single piece of literature, an instruction book, or a specification providing that the rounds only disintegrate upon hitting metal.

Furthermore, Lieutenant Randy Groh testified that he spoke with a Safariland representative after the incident who told him that the breaching rounds must hit metal to disintegrate. R. 103 ¶ 18. This creates a reasonable inference that Safariland was aware of this propensity of its product at the time of manufacture. And to be sure, Safariland does not dispute in its motion that it knew the rounds must hit metal to function properly. This is enough evidence for a reasonable jury to find that Safariland failed to adequately warn of the risk presented by the breaching rounds. Safariland's motion for summary judgment on Count III is denied.

9

II.    Negligence (Count IV)

Safariland next moves for summary judgment on Hakim's negligence claim. The Court notes its uncertainty as to what type of negligence claim Hakim seeks to bring. In the summary judgment briefing, both parties treat Count IV as a negligent design claim. But the complaint sounds more in negligent manufacture and negligent failure to warn than it does negligent design. *See* R. 55 ¶ 9(a)-(f). The Court will thus analyze all three here.

A product liability claim based on negligence falls within the framework of common law negligence. *Calles*, 864 N.E.2d at 263. As such, a plaintiff must establish "the existence of a duty of care owed by the defendant, a breach of that duty, an injury that was proximately caused by that breach, and damages." *Id.*

Hakim's negligence claim may proceed to the extent he alleges negligent manufacture and negligent failure to warn. Turning first to negligent manufacture, a genuine issue of material fact exists as to whether the breaching round hit the metal hinge and failed to disintegrate, thus rendering it defective. *See supra* pp. 6-7. If such a defect exists, it would establish that Safariland breached the standard of care for a negligent manufacture claim. *See Malen v. MTD Prod., Inc.*, 628 F.3d 296, 305 (7th Cir. 2010) (holding that a defect making the product unreasonably dangerous would also establish a breach of the standard of care for negligent manufacture). Likewise, Hakim's negligent failure to warn claim may proceed for the same reasons as his claim for strict liability failure to warn. Namely, Hakim has put forth evidence that Safariland failed to warn consumers the breaching rounds only disintegrate upon

10

striking metal despite its knowledge of this propensity. *See McMahon v. Eli Lilly & Co.*, 774 F.2d 830, 837 n.2 (7th Cir. 1985) ("The elements of negligent failure to warn are very similar to those of failure to warn in strict liability."); *see also In re Depakote*, 2015 WL 4776093, at *3 (S.D. Ill. Feb. 14, 2015) (analyzing strict liability and negligence theories of failure to warn together).

However, to the extent Hakim claims negligent design, Safariland is entitled to summary judgment. The "key question in a negligent-design case is whether the manufacturer exercised reasonable care in designing the product." Whether a manufacturer exercised reasonable care "encompasses a balancing of the risks inherent in the product design with the utility or benefit derived from the product." *Id.* (citing Restatement (Second) of Torts § 291, at 54 (1965)). This balancing analysis is "essentially identical" to the risk-utility test for strict liability, and thus the risk-utility test "remains operative in determining whether a defendant's conduct is reasonable in a negligent-design case." *Id.* at 1154-55; *see supra* p. 5.

Safariland argues that Hakim has not demonstrated that it acted unreasonably in designing the breaching rounds. In response, Hakim first contends that there is evidence that the breaching rounds were not performing pursuant to their design on the day he was injured. But this goes to a claim for manufacturing defect, not design defect. Hakim next argues that his negligent design claim survives because the risk-utility test for design defect also applies to negligent design. True, but the problem with this argument is that Hakim brings his strict liability claim under a consumer-expectation method of proof, not risk-utility. Indeed, Hakim

11

produced no evidence of industry standards, feasible alternative designs, design guidelines, or Safariland's ability to eliminate the unsafe character of its product. Instead, Hakim's expert, Phillip O'Keefe, states in conclusory fashion that "[t]he magnitude of the danger the TKO Breaching Round design poses outweighs its utility." R. 103-12 ¶ 28. O'Keefe offers no support for that conclusion in his report or his deposition. An "expert who supplies nothing but a bottom line supplies nothing of value to the judicial process, and his 'naked opinion' does not preclude summary judgment." *Weigel v. Target Stores*, 122 F.3d 461, 469 (7th Cir. 1997) (quoting *American Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1464 (7th Cir. 1996) (Posner, C.J., dissenting)).[3] That is the case here. Cases "that have not survived summary judgment are those in which all the risk-utility factors weighed in the defendant's favor or the plaintiff failed to present any evidence to create a factual dispute as to any of the risk-utility factors." *Walker v. Macy's Merc. Grp., Inc.*, 288 F. Supp. 3d 840, 862 (N.D. Ill. 2017) (discussing risk-utility test in the context of a strict liability design defect claim). Hakim has simply offered no evidence that would allow the Court to engage in a meaningful balancing test to determine whether Safariland acted reasonably in designing the breaching rounds. *See Assaf v. Cottrell, Inc.*, 2012 WL 4177274, at *3 (N.D. Ill. Sept. 19, 2012) (granting summary judgment on strict liability design defect claim based on risk-utility method of proof because plaintiff

---

[3] The Court's conclusion pertains only to O'Keefe's conclusion on the risk-utility test. The Court does not address any other opinion contained in O'Keefe's report.

12

presented no evidence allowing the court to balance the risks and benefits of the challenged design).

"The key distinction between a negligence claim and a strict liability claim lies in the concept of fault." *Calles*, 864 N.E.2d at 263. In a strict liability claim, the focus is on the condition of the product. *Id.* In a negligence claim, however, "a defendant's fault is at issue in addition to the condition of the product." *Id.* at 264. This distinction is immaterial when a plaintiff brings a strict liability design defect claim based on the risk-utility test because risk-utility also lies at the core of negligence. *See Jablonski*, 955 N.E.2d at 1154 ("When the risk of harm outweighs the utility of a particular design, there is a determination that the manufacturer exposed the consumer to a greater risk of danger than is acceptable to society."); *see also* Aaron D. Twerski, *Chasing the Illusory Pot of Gold at the End of the Rainbow: Negligence and Strict Liability in Design Defect Litigation*, 90 Marq. L. Rev. 7, 12 (2006) (explaining that if "risk-utility tradeoffs are to be utilized to decide whether a design is defective, then there is no difference between negligence and strict liability"). But the consumer-expectation test does not implicate a manufacturer's conduct in the same way. Because Hakim bases his strict liability design defect claim on the consumer-expectation test, and offers no evidence to support that Safariland acted unreasonably in designing the breaching rounds, his negligent design claim cannot survive summary judgment.

As such, the Court grants Safariland's motion for summary judgment on Count IV to the extent Hakim brings a negligent design claim.[4] The Court denies Safariland's motion to the extent Hakim claims negligent manufacture and negligent failure to warn.

III.     Proximate Cause

Safariland next contends that no matter what the theory of liability (strict or negligence), it is entitled to summary judgment because there was no proximate cause between its actions and Hakim's injuries. Proximate cause encompasses two requirements: cause-in-fact and legal cause. *Malen*, 628 F.3d at 309. For cause-in-fact, the Court asks "whether the injury would have occurred absent the defendant's conduct." *Walker*, 288 F. Supp. 3d at 856 (quoting *Young v. Bryco Arms*, 821 N.E.2d 1078, 1085 (Ill. 2004)). To establish legal cause, a plaintiff must show that "the ultimate injury was reasonably foreseeable," which "is satisfied by proof that a reasonable person could foresee that his conduct could lead to the injury complained of." *Id.* (quoting *Riviera v. Garcia*, 927 N.E.2d 1235, 1242 (Ill. 2010)). Proximate cause is ordinarily a question for the trier of fact but may be found as a matter of law "when

---

[4] Hakim's complaint also includes claims for *res ipsa loquitor*. *Res ipsa loquitor* is "an evidentiary rule which allows an inference of negligence to be drawn from a certain set of facts." *Guzman v. Target Corp.*, 2018 WL 5977924, at *2 (N.D. Ill. Nov. 14, 2018) (quoting *Newell v. Westinghouse Elec. Corp.*, 36 F.3d 576, 578 (7th Cir. 1994)). The doctrine allows "proof of negligence by circumstantial evidence when the direct evidence concerning cause of injury is primarily within the knowledge and control of the defendant." *Id.* (quoting *Metz v. Cent. Ill. Elec. & Gas Co.*, 207 N.E.2d 305, 307 (Ill. 1965)). Safariland does not raise *res ipsa loquitor* in its motion, and thus the Court assumes that Safariland does not object to Hakim invoking the doctrine in support of his remaining negligence theories at trial.

14

the facts are not only undisputed but are also such that there can be no difference in the judgment of reasonable men as to the inferences to be drawn from them." *Blood v. VH-1 Music First*, 668 F.3d 543, 546 (7th Cir. 2012) (quoting *Merlo v. Pub. Serv. Co. of N. Ill.*, 45 N.E.2d 665, 675 (Ill. 1942)).

Safariland argues that it was not reasonably foreseeable that an untrained officer would improperly use the breaching rounds in an unsafe environment. As an initial matter, Hakim disputes that Alaniz was not properly trained and that the breaching rounds were improperly fired. But even accepting that Alaniz was unqualified, a reasonable jury could still find that an unqualified officer's training in the presence of a certified instructor is a foreseeable use of breaching rounds.

The sole case Safariland cites to support its position, *Rodriguez v. Glock, Inc.*, 28 F. Supp. 2d 1064 (N.D. Ill. 1998), is easily distinguishable. In *Rodriguez*, the plaintiff sued a gun manufacturer after her husband received a fatal gunshot wound in a struggle outside of a nightclub, alleging that the weapon was defectively designed. The court granted summary judgment for the defendants, reasoning that regardless of any alleged defects, the recklessness of pointing a gun at another person excused the manufacturer from liability because the struggle was an independent superseding cause. *Id.* at 1073 ("Glock did not point the weapon at Rodriguez or struggle with him over its control and could not have reasonably anticipated that the weapon would be used in this manner."). Far from pointing the shotgun at Hakim, Alaniz was using the rounds to breach a door – the exact activity they were designed

15

for – when Hakim's injury occurred. These facts are not such that the Court can determine proximate cause as a matter of law

## Conclusion

For the reasons stated above, Safariland's motion for summary judgment [R. 93] is granted to the extent that Hakim brings a claim for negligent design. The motion is denied in all other respects.

ENTERED:

*Thomas M Durkin*
_____

Honorable Thomas M. Durkin
United States District Judge

Dated: October 18, 2019