IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID HAKIM, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SAFARILAND, LLC and DEFENSE ) <br> TECHNOLOGY CORPORATION OF ) <br> AMERICA, ) <br> ) <br> Defendants. ) | Case No. 1:15-cv-06487 <br><br> Honorable Thomas M. Durkin |

**DEFENDANTS SAFARILAND, LLC AND DEFENSE TECHNOLOGY CORPORATION OF AMERICA MOTION FOR JUDGMENT AS A MATTER OF LAW AT THE END OF PLAINTIFF'S CASE**

Defendants, SAFARILAND, LLC AND DEFENSE TECHNOLOGY CORPORATION OF AMERICA, by their attorney JOHN W. PATTON, JR., of PATTON & RYAN, LLC, move this Honorable Court, pursuant to Fed. R. Civ. P. 50(a), for judgment as a matter of law in favor of defendants SAFARILAND, LLC AND DEFENSE TECHNOLOGY CORPORATION OF AMERICA, and against plaintiff DAVID HAKIM. In support, defendants state:

1. Plaintiff has brought a products liability action alleging defective design, defective manufacture, and the failure to warn plaintiff about the need to shoot defendants' breaching round into a solid metal surface. Though having the burden of proof, plaintiff did not offer evidence sufficient to get any of his claims to the jury. JMOL should be granted.

2. The happening of an accident does not create an inference that a product was defective and that it caused an injury. *Schaefer v. Universal Scaffolding & Equip*., LLC. 839 F.3d 599, 604 (7th Cir. 2016); *West v. Deere & Co*., 201 Ill. App. 3d 891, 897, 559 N.E.2d 511

7641245.1

(2d dist. 1990); *Shramek v. Gen. Motors Corp.*, 69 Ill. App. 2d 72, 78, 216 N.E.2d 244 (1st. Dist. 1966).

3. Moreover, Illinois law holds that where the subject of a lawsuit involves specialized information beyond the ken of an average juror, expert testimony must be provided. *See, Henry v. Panasonic v. Factory Automation Co.*, 396 Ill. App. 3d 321, 326-27, 917 N.E.2d 1086 (4th Dist. 2009) (affirming summary judgment for defendants because of failure to offer expert opinion as to defective design).

4. Here, plaintiff has no offered any expert opinion as to any of his three liability theories. As for plaintiff's design claim, the consumer expectation defense is often applied, as it has been applied in this case. Under the test:

> [A] plaintiff must establish what an ordinary consumer purchasing the product would expect about the product and its safety. This is an objective standard based on the average, normal, or ordinary expectations of the reasonable person; ***it is not dependent upon the subjective expectation of a particular consumer or user.*** See American Law of Products Liability 3d § 17:24, at 17-44 (1997); L. Bass, Products Liability: Design & Manufacturing Defects § 4:1 (2d ed. 2001); *Britton v. Electrolux Home Products, Inc.*, No. CIV-05-1322-F, 2006 U.S. Dist. LEXIS 74945 (W.D.Okla. October 13, 2006); *Crosswhite v. Jumpking, Inc.*, 411 F. Supp. 2d 1228, 1232 (D. Or. 2006); *Henrie v. Northrup Grumman Corp.*, No. 2:04-CIV-00296, 2006 U.S. Dist. LEXIS 23621 (D. Utah April 24, 2006). See also 1 D. Owens, M. Madden & M. Davis, Madden & Owens on Products Liability § 5:6, at 294-5 (3d ed. 2000).
>
> *Calles v. Scripto-Tokai Corp.*, 224 Ill. 2d 247, 254, 864 N.E.2d 249 (2007) (emphasis supplied).

An average juror does not have knowledge about the design of a shotgun breaching round. An ordinary consumer would expect that if a breaching round hit its ultimate target—a metal object—the round would disintegrate. That was the instruction given that were part of the product: hit a metal hinge, latch, locking mechanism, and the like. Disrupting a metal object is

7641245.1

the purpose of a round, not putting a hole in a wooden door. The evidence at trial showed that when the round hit metal, they disintegrated.

5. Moreover, there is no expert evidence that the composition of the round itself, the casing from which it was shot, the primer, and/or the ignition source that propelled the round out of the shotgun, were designed in a matter that made breaching rounds, as a whole, unreasonably dangerous to use for their intended and expected purpose. Plaintiff did not offer any governmental regulations, industry standards, or expert opinion dealing with the proper design of a breaching round. Though argument and witness testimony, plaintiff has conceded over and over that defendants' product has worked effectively and safely countless times. Plaintiff's complaint is that only the batch of shells involved here were defective, which eliminates any claim that breaching wrounds, as a whole, were defectively designed. Plaintiff did not offer any evidence of a reasonable and feasible alternative design for a breaching round. There is absolutely no evidence that any person, at any time prior to this accident, has ever been hurt by a defective round. The video evidence regarding the actual training exercise showed that the round can be safely shot. Coupled with the lack of any evidence—expert or otherwise—of a defective product design, defendants are entitled to JMOL as to plaintiff's defective design claim.

6. Furthermore, under the risk-utility test:

> [A] plaintiff may prevail in a strict liability design-defect case if he or she demonstrates that the magnitude of the danger outweighs the utility of the product, as designed. *Lamkin*, 138 Ill. 2d at 529. Stated differently, "[t]he utility of the design must therefore be weighed against the risk of harm created" and "[i]f the likelihood and gravity of the harm outweigh the benefits and utilities of the product, the product is unreasonably dangerous." 63A Am. Jur. 2d Product Liability § 978, at 146-47 (1997).
>
> *Calles* at 259.

7641245.1

The breaching round has been used millions of times because it has been proven safe and effective in disrupting metal attachment points. It has allowed law enforcement and military personnel all over the world to accomplish their missions of saving hostages' lives and successfully ending hostile incidents. Its benefits greatly outweigh the risks. This is particularly true given the fact that the round is intended to hit metal every time it is used. The round does not become unreasonably dangerous simply because a user misses the ultimate target—as was true here. Under either test, as a matter of law plaintiff failed to prove a defective design.

7. As for the alleged defective manufacture, there was no expert evidence offered as to the manufacturing process itself. Again, plaintiff did not offer any evidence as to any governmental regulations, industry standards, and/or expert opinions regarding the manufacture of a breaching round, let alone evidence that defendants violated them. There has been no evidence that the zinc and other constituent elements were improperly compressed—whether inadequately compressed or excessively compressed. There has been no evidence that the casing of the round and the primer and gunpowder used to propel it were defective or inadequate for the safe use of the round. There has been no evidence of a feasible and safe alternative manufacturing process for the round. Plaintiff has offered to evidence that there was any problem with how the round hitting plaintiff was manufactured. As the law states, an accident is not proof of defective manufacture.

8. Plaintiff's defective warning claim must also fail as a matter of law. Plaintiff did not offer any expert evidence regarding any governmental regulations, industry standards, or expert opinions regarding warnings. No expert, or anyone else, testified as to the hierarchy and nature of warnings that must be given for a breaching round of a product reasonably similar to it. No expert or anyone else explained the nature, purpose, and hierarchy of warnings that must be

given. The average juror does not have knowledge regarding what must be told to product users, and how, particularly given that the expected user of a breaching round is a law enforcement officer or a military person. The jury has been totally uninformed as to the standard to be applied in judging plaintiff's failure to warn claim.

9. Besides, defendants' literature does tell any product user who read the literature before using the round how to safely use it. The literature told them that the ultimate intended target for a round is a hinge, latch, safety chain, doorknob, and locking mechanism—all metal objects. If a user must shoot through a door to reach one of those objects, the ultimate target is still the metal object, not the door itself. Hitting wood is merely incidental to hitting metal. It makes common sense that if hitting wood alone causes a round to disintegrate into fine powder, the round could not do its intended job—disrupting metal. That should have been patently clear to anyone reading the literature. It certainly was clear to Glenn Murakami, the SWAT team member who gave a demonstration of how to breach a door. The video of his demonstration showed that he was shooting directly, and at extremely close range, at the metal objects he was trying to disable. When he was shooting at the door latch, he shot through wood, but only to disrupt the metal latch itself. The intended targets were always metal, and that information came from the product literature. Plaintiff's witness Eric Koty admitted that he was told to hit metal. Defendants are entitled to JMOL as to the warnings claim.

10. Plaintiff points to evidence of fragments and partially intact rounds on the floor. That evidence did not create an issue of fact as to the product. The problem with plaintiff's argument is that she shells were under the control of the shooters during the exercise. Whether they hit the intended targets was never proven as to any shot fired during the exercise (other than the demonstration shots by Glenn Murakami). There was never any expert analysis conducted

regarding those shots. And as to the shot that hit plaintiff, an investigator of the DuPage County State's Attorney's office concluded that the shot did not strike the I-beam at all. It passed directly though the wooden riser and soft carpet and struck plaintiff. The variable that shells were being shot with unknown and unproven accuracy prevents plaintiff from ever proving any of his theories of product defect.

11. Assuming that plaintiff is still offering a products liability/*res ipsa loquitor* claim, JMOL should be granted for defendants as to it. The doctrine is not a good fit for products liability, and defendants have found no Illinois case applying re ipsa loquitor as a products liability theory. Moreover, defendants had either exclusive or concurrent control over the breaching round at the time of the accident. The round was totally in the control of the SWAT team.

12. As a matter of law, plaintiff has also failed to prove that a defective breaching round was a proximate cause of his injury. The concept of sole proximate cause applies in products liability actions. "In a strict product liability action, '***a manufacturer can avoid all responsibility where the evidence establishes that the sole proximate cause of the injury was the conduct of another***." *Lott v. ITW Food Equip. Group LLC*, 2013 U.S. Dist. LEXIS 98503, *89 (N.D. Ill.) (emphasis supplied); *Ocampo v. Paper Converting Mach. Co.*, 2005 U.S. Dist. LEXIS 17107, *35 (N.D. Ill.) (same); *Maxwell v. Hobart Corp.*, 216 Ill. App. 3d 108, 113, 576 N.E.2d 268 (1st Dist. 1991) (same). The sole proximate cause need not be a negligent or fault-worthy cause. *McDonnell v. McPartlin*, 192 Ill. 2d 505, 511, 736 N.E.2d 1074 (2000). And sole proximate cause can come from a combination of actors or agencies, not just a single actor or agency. *Nolan v. Weil-McLain*, 233 Ill. 2d 416, 445, 910 N.E.2d 549 (2009); *Ready v.*

*United/Goedecke Services, Inc.*, 238 Ill. 2d 582, 592, 939 N.E.2d 417 (2010); *Douglas v. Arlington Park Racecourse LLC*, 2018 IL App (1st) 162962, ¶37, 57-58, 117 N.E.3d 313.

13. Here, the sole proximate cause of plaintiff's injury was a combination of actions by the DuPage County Sheriff's Office and the members of the SWAT team. They allowed a live-fire training session in a residential neighborhood, where SWAT team members who did not have all of the training normally provided were allow to shoot the breaching shotgun. Officer O'Neill protested the use of live fire during the exercise, but his opinion was disregarded. They did not coordinate and communicate activities during the exercise to ensure that no one, and more specifically plaintiff, was downrange and in the line of fire. They did not stop Officer Alaniz from shooting when it became apparent that he needed proper training. As concluded by the County's own investigation of the incident, Officer Alaniz, an inadequately trained SWAT team member, did not hit the intended target nor the steel pole an I-beam in the closet with his third shot—the very shot that hit plaintiff. Instead, he hit a wooden riser that allowed a fragment to hit plaintiff. The evidence is undisputed that when a shooter misses the intended target, bad and dangerous things can happen. In this case, they did. Whether these actions were fault-worthy or not is irrelevant as a matter of law. They were causal, and together they amounted to the sole proximate cause of the accident.

Wherefore, Defendant, SAFARILAND, LLC and DEFENSE TECHNOLOGY CORPORATION OF AMERICA, respectfully requests judgment as a matter of law in their favor and against plaintiff, DAVID HAKIM.

Respectfully submitted,

*/s/* John W. Patton
One of the Attorneys for the Defendants

7641245.1

John W. Patton, Jr.
Bar No.: 6186472 (IL)
**PATTON & RYAN, LLC**
330 N. Wabash Avenue, Suite 3800
Chicago, Illinois 60611
Ph: (312) 261-5160
Fax: (312) 261-5161
jpatton@pattonryan.com

## CERTIFICATE OF SERVICE

I, Brian Flomer, a non-attorney, under penalties as provided by law pursuant to 735 ILCS 5/1-109, hereby certify that on August 31st, 2021, I provided service to the person or persons listed on the Service List below and caused the foregoing to be electronically filed with the United States District Court for the Northern District of Illinois, Eastern Division, using the CM/ECF system.

## SERVICE LIST:

**Attorney for Plaintiff**
Edmund J. Scanlan
8 South Michigan Avenue, Suite 2700
Chicago, IL. 60603
Tel: (312) 422-0343
Fax: (312) 422-0358
Email: ejs@scanlanlawgroup.com

7641245.1