UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID HAKIM,<br><br>    Plaintiff,<br><br>    v.<br><br>SAFARILAND, LLC and DEFENSE TECHNOLOGY CORPORATION OF AMERICA,<br><br>    Defendants. | No. 15 C 06487<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

David Hakim sued Safariland, LLC and Defense Technology Corporation of America (collectively, "Safariland") for products liability after he was injured during a SWAT team training exercise that used shotgun breaching rounds manufactured by Safariland. The case was tried to a jury from August 23 to September 2, 2021, and Hakim was awarded $7,500,000 in compensatory damages on his failure to warn claim. Safariland has moved for judgment as a matter of law under Federal Rules of Civil Procedure 50(a) and 50(b), a new trial under Rule 59(a), and a reduction in damages. Safariland has also moved to strike affidavits filed by Hakim with his opposition briefing. For the reasons set forth below, Safariland's motion to strike is granted, but the post-trial motions under Rules 50 and 59 are denied. Judgment is entered in favor of Hakim according to the jury's verdict.

**Background**

Hakim's claims arose from an accident that occurred during a training session when he was a member of the DuPage County SWAT team. On December 11, 2014,

1

Officer O'Neil led a demonstration of door-breaching technique at an abandoned residence. The technique used TKO Breaching Rounds made by Safariland. Breaching rounds are shotgun shells loaded with compressed zinc powder. They are used by law enforcement to gain entry in tactical operations by breaching door locks, hinges, dead bolts, or safety chains. Upon impact with the target, the rounds are designed to disintegrate into a fine powder.

Following O'Neil's demonstration, the SWAT team was divided into groups to practice in the basement and first floor of the house. O'Neil did not initially realize that the officers would be performing live breaching and recommended they learn on a flat range first. The commanding officer nonetheless allowed the officers to proceed with the live training.

During the breaching practice, Hakim was on the first floor of the house. Officer Alaniz, who had no prior experience with the TKO breaching round, was practicing in the basement. O'Neil instructed Alaniz to aim the shotgun straight between the hinge pin and the door, parallel with the floor. Alaniz fired multiple shots. One of the rounds traveled through the door, hit a beam behind the door, deflected through the basement ceiling, struck Hakim's body armor, and deflected into his spine.

One of the central disputed facts at trial was whether Safariland had adequately warned users that the TKO breaching round must hit metal to disintegrate. Safariland argues that this fact was known at least to the DuPage County Sheriff's Office as early as 2008. It cites to evidence that in September 2008,

the Sheriff's Office provided an 8-hour training course on shotgun breaching. Hakim attended this training, as did numerous other SWAT officers, some of whom testified at trial.

While the fact that Hakim attended this training in 2008 is not disputed, the content of that training is. During Safariland's examination of its expert witness Ken Hubbs, Hubbs reviewed a summary of SWAT team training that took place on September 12, 2008. The summary is dated September 18, 2008. It describes an 8-hour shotgun breaching operator course involving classroom and firing range instruction. Topics of instruction included angles of deployment and positioning of team members. The attached attendance sheet indicates that Hakim and other SWAT officers attended this training.

Along with the training summary and attendance sheet, Hubbs also discussed a lesson plan authored by Steve Ijames covering the use and deployment of 12-gauge breaching projectiles. The Ijames lesson plan contains warnings about the proper use of breaching rounds. For example, it emphasizes that precise angles of deployment are critical to ensure that primary and secondary projectiles do not travel beyond the intended target where they might cause injury or death. It also warns that breaching rounds will penetrate wooden doors and certain varieties of metal doors, and that proper targets include deadbolts, locking mechanisms, and hinges.

During Hubbs's testimony, Safariland offered the training summary, attendance sheet, and Ijames lesson plan into evidence as group exhibit 31D. Hakim objected to this exhibit as not having been disclosed nor included on Safariland's

3

exhibit list. Hakim also said he did not have a complete copy of the complete exhibit, specifically the lesson plan. Apparently, a logistical mix-up delayed sending a copy to Hakim's counsel at the time. However, it is undisputed that the lesson plan was originally produced by Hakim in discovery. The lesson plan is also referenced in Hubbs's expert report, though Hubbs never explicitly states in his report that the lesson plan was included in the 2008 training session.

Safariland's examination of Mr. Hubbs proceeded on the assumption that the training session in September 2008 incorporated the Ijames lesson plan and implied that O'Neil had taught the training attendees, including Hakim, about the topics in the lesson plan. For example, defense counsel referred to the lesson plan as "the materials that were authored by Ijames and taught by O'Neil." Safariland reiterated this point during their closing arguments.

At the close of Hakim's evidence, Safariland moved for judgment as a matter of law under Rule 50(a). The Court deferred consideration of that motion pending submission of the case to the jury under Rule 50(b).

The case went to the jury on three claims: manufacturing defect, design defect, and failure to warn. The jury returned a verdict for Safariland on the manufacturing and design defect claims but found in favor of Hakim on the failure to warn claim. It awarded $7,500,000 in compensatory damages, itemized as follows: $175,271 for the reasonable expense of necessary medical care, treatment and services received; $110,550 for the value of earnings and benefits lost; $3,607,090 for the disability experienced and reasonably certain to be experienced in the future; and $3,607,089

4

for the pain and suffering experienced and reasonably certain to be experienced in the future as a result of the injury.

Prior to entering judgment on the jury verdict, the Court set a briefing schedule for Safariland's post-trial motions, which were filed November 8, 2021. Safariland renewed its request for judgment as a matter of law on the failure to warn claim and moved for a new trial in the alternative. Safariland also seeks a reduction in damages and has moved to strike a set of affidavits submitted by Hakim as part of his response to the post-trial motions.

## Legal Standard

Federal Rule of Civil Procedure 50(b) allows a party to renew a motion for judgment as a matter of law previously made under Rule 50(a). Under Rule 50(a), a court should grant judgment as a matter of law against a party if the party "has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). When determining whether a legally sufficient evidentiary basis exists, the court considers whether "the evidence as a whole, when combined with all reasonable inferences permissibly drawn from that evidence, is sufficient to allow a reasonable jury to find in favor of" the non-moving party. *Hall v. Forest River, Inc.*, 536 F.3d 615, 619 (7th Cir. 2008).

## Analysis

**I.  Motion to Strike**

Hakim submitted several affidavits with his opposition to Safariland's 50(b) motion in which he and other SWAT officers, including the officer who led the

5

September 12 training, attest that the Ijames lesson plan was not part of that training, and that they had no knowledge of that lesson plan prior to the time Hakim was injured. *See* R. 241-53. Some of the affiants testified at trial, others did not. Safariland moves to strike these affidavits as improper submissions. The Court agrees.

Hakim has cited to no authority that would permit the Court to consider affidavits created post-trial containing testimony that could have been elicited at trial but was not. *Cf. Cypress Drilling, Inc. v. Griffin*, 2010 WL 2075992, at *3 (W.D. La. May 21, 2010) (refusing to consider purportedly "new" evidence submitted with a motion for a new trial because evidence concerned an issue the party previously knew about, argued, and briefed). Furthermore, Hakim had ample opportunity at trial to rebut Safariland's assertion that the 2008 training session incorporated the Ijames lesson plan. The contents of exhibit 31D were apparent during Hubbs's testimony. The record reflects that portions of the lesson plan were shown to the jury, and Hakim was already familiar with what it contained, having produced it in discovery and discussed it at his deposition. Nonetheless, Hakim did not address the issue in cross examination or rebuttal argument.

The Court also declines to wade into Hakim's accusations that defense counsel fabricated evidence. Hakim states that Safariland and its expert Hubbs were aware of Hakim's deposition testimony in which he said he first received the Ijames lesson plan directly from Ijames via email 10 days after the accident, but still presented the lesson plan as part of the training session. However, when defense counsel moved to

6

admit the exhibit into evidence during Hubbs's testimony, Hakim's counsel did not object. Hakim's counsel later moved for a mistrial after the case had been submitted to the jury but before a verdict, arguing that Exhibit 31D had not been admitted into evidence. The Court reserved the motion pending the verdict, noting its recollection that the exhibit had been properly admitted, and Hakim did not press the issue any further.[1] If the challenged exhibit was indeed misleading, Hakim could have clarified it on the trial record at several junctures. A post-trial motion is not an opportunity to re-litigate a disputed issue of fact through evidence not presented to the jury. Safariland's motion to strike is granted.

## II. Motion for Judgment as a Matter of Law or New Trial

Safariland advances two main arguments in support of its motion for JMOL: First, that the evidence conclusively established that the DuPage County Sheriff's Office, as well as Hakim himself, knew about the potential dangers of the TKO breaching round well before the accident where Hakim was injured. Second, that Hakim's injuries were caused solely by poor planning, communication, and execution of the 2014 training exercise conducted by the DCSO and its SWAT team.[2]

---

[1] The trial transcript confirms Exhibit 31D was admitted without objection during Hubbs's testimony, and given the jury's verdict, Hakim's motion for mistrial is now denied as moot.

[2] Safariland's motion for JMOL under Rule 50(b) is properly limited to arguments it raised in its original motion for JMOL under Rule 50(a). The Court considers both motions together. *See Raymond v. Wilcox Mem'l Hosp.*, 403 F. Supp. 3d 868, 875 (D. Haw. 2019).

7

Overturning a jury verdict is not to be done lightly. *Massey v. Blue Cross-Blue Shield of Illinois*, 226 F.3d 922, 925 (7th Cir. 2000). The Court will set aside a verdict under Rule 50(b) only if, taking all the evidence in the light most favorable to the non-moving party, there was not a "legally sufficient amount of evidence from which [the jury] could reasonably derive its verdict." *Id.* at 924. Here, the totality of the evidence presented to the jury allowed more than one conclusion as to the appropriateness and efficacy of the warnings. The jury was entitled to find as it did.

Everything Safariland cites in its motions was before the jury for consideration. This includes the training materials and expert testimony explaining their significance. Notably, Safariland did not cross examine any of the officer witnesses with the Ijames lesson plan, which might have proven or disproven their familiarity with its teachings. Instead, the jury was left to juxtapose Safariland and Hubbs's implication that Hakim and other officers were familiar with the topics in the Ijames lesson plan with other evidence that the officers understood the breaching round to be essentially incapable of causing the injury that occurred here. The jury heard testimony from many of the officers involved in the training exercise suggesting they believed the breaching rounds would disintegrate upon hitting a hard surface, and heard about warnings to this effect. There was also evidence that Safariland never explicitly warned users that the TKO breaching charge must hit metal to disintegrate. At the very least, the warnings were not consistent on this point.

Safariland is essentially arguing the jury was required to draw specific inferences from the evidence in its favor and disregard conflicting evidence. This is

8

not correct. If the jury concluded that Hubbs's testimony was not entirely credible or was less persuasive than conflicting testimony, that was their prerogative, and the Court does not supplant witness credibility determinations. *Gicoletto v. Amax Zinc Company*, 954 F.2d 424, 426 (7th Cir. 1992). The jury was entitled to weigh contrasting evidence as it deemed appropriate, and the Court's review is limited to whether the evidence as a whole allowed a reasonable juror to find in favor of the plaintiff. *Hall*, 536 F.3d at 619. In this case, it did.

Safariland's causation argument is similarly unavailing. Safariland cites to evidence that the training exercise in which Hakim was injured was conducted in an unsafe manner, which it says was the sole cause of Hakim's injury. *See Lott v. ITW Food Equip. Grp. LLC*, 2013 WL 3728581, at *30 (N.D. Ill. July 15, 2013) (observing that a defendant in a strict liability action "can avoid all responsibility where the evidence establishes that the sole proximate cause of the injury was the conduct of another" (quoting *Soto v. E.W. Bliss Div. Gulf & W. Mfg. Co.*, 452 N.E.2d 572, 578 (Ill. App. Ct. 1983))). Here again, the jury was entitled to reject the inference that poor planning or execution of the training was 100% at fault for Hakim's injury. The jury was properly instructed that it could find Safariland liable even if one or more other persons were partially to blame for Hakim's injury. It was also instructed that if one or more persons other than Safariland were 100% responsible for Hakim's injuries, it should return a defense verdict. Juries are presumed to have followed court instructions, *Perry v. McCaughtry*, 308 F.3d 682, 690 (7th Cir. 2002), and the verdict

9

here reflects that the jury concluded Safariland was at least partly responsible for Hakim's injuries.

Furthermore, it was foreseeable that users of the TKO breaching round, including SWAT officers, might deploy them in a less-than-perfect manner. Such a fact does not cut off liability for Safariland on a failure to warn theory. *See Rodriguez v. Glock, Inc.*, 28 F. Supp. 2d 1064, 1071-72 (N.D. Ill. 1998) (noting that an intervening cause that reasonably could have been anticipated will not break the causal connection between the alleged defect and injury).

In summary, the Court the jury's verdict in this case was reasonable and supported by sufficient evidence. Safariland is not entitled to judgment as a matter of law.

For largely the same reasons, Safariland's alternative request for a new trial under Federal Rule 59(a) must be denied. First, the jury's verdict was not contrary to the manifest weight of the evidence. A verdict will be set aside on this ground "only if no rational jury could have rendered the verdict." *Willis v. Lepine*, 687 F.3d 826, 836 (7th Cir. 2012). The jury was properly instructed that to find in favor of Hakim on the failure to warn claim, it had to find that Safariland failed to warn that the TKO breaching round must strike metal to disintegrate, that this failure made the breaching round unreasonably dangerous, and that the failure to warn caused Hakim's injury. The jury heard evidence on the gaps and inconsistencies in the warnings Safariland provided. Based on this evidence, it could rationally conclude

that any warnings provided by Safariland failed to communicate this key safety-related point.

Second, the verdicts on the defective design, defective manufacture, and failure to warn claims were not legally inconsistent. The Illinois Supreme Court has described a legally inconsistent verdict as one "in which the same element is found to exist and not exist, as when a defendant is acquitted of one offense and convicted of another, even though the offenses arise from the same set of facts and an element of the second offense requires proof that the first offense has been committed." *Redmond v. Socha*, 837 N.E.2d 883, 849 (Ill. 2005).

Safariland has not identified any essential common element found to be proven in one claim but not another. They speculate that the jury's rejection of the defective design and manufacturing claims means that the jury should have likewise rejected the failure to warn claim, but those theories are separate and do not necessarily rise and fall together. The Court does not find the verdict here to be legally inconsistent. Safariland's motion for a new trial under Rule 59(a) is denied.

### III.  Motion for Remittitur or New Trial

Finally, Safariland seeks an order remitting damages from $7.5 million to $1 million or ordering a new trial on the failure to warn claim if Hakim refuses to accept the reduced award. *See Adams v. City of Chicago*, 798 F.3d 539, 541 (2015) (describing the ordinary procedure for remittitur). Safariland first suggests that the jury may have accounted for attorney's fees in calculating damages, because the itemized damages were calibrated to give a gross total of $7.5 million, which yields $5 million

11

when subtracting what the Safariland calls "the usual one-third for attorney's fees from the gross award." This is of course pure speculation, as the issue of attorney's fees never once came up before the jury. Safariland's theory is no more plausible than the conclusion that the jury simply intended Hakim to get $7.5 million, and the Court doubts whether attorney fee arrangements are common knowledge among jurors.

Furthermore, Safariland's argument invites the Court to improperly interrogate the jury's decision-making process. Such second-guessing is outside the scope of a Court's proper review of a jury award. *See Tuf Racing Products, Inc. v. American Suzuki Motor Corporation*, 223 F.3d 585, 591 (7th Cir. 2000) (explaining that when evaluating a jury's damages award, "the court looks only at the 'bottom line,' to make sure it's reasonable, and doesn't worry about the mental process that led there"). In any event, nothing in the record suggests the jury brought improper considerations to bear in calculating its award. The verdict form shows a reasoned assessment of damages to arrive at the total. The mere fact that the total is a round number does not imply any improper consideration by the jury. Given the highly subjective nature of damages for categories such as pain and suffering, the jury is not bound to arrive at a figure that "looks" more exact. *See Wells v. City of Chicago*, 896 F. Supp. 2d 725, 741 (N.D. Ill. 2012) (emphasizing the "subjective nature of damages in general and of pain and suffering damages in particular"). Damages will not be reduced on this basis.

Safariland also argues the jury's award is substantively excessive. It claims the award has no rational connection to the evidence of Hakim's ongoing medical

conditions and was based on prejudice against Safariland, inflamed by improper arguments from Hakim's counsel.

A jury's damages award is entitled to "substantial weight." *Levka v. City of Chicago*, 748 F.2d 421, 425 (7th Cir. 1984). A remittitur analysis considers three factors: "whether (1) the award is monstrously excessive; (2) there is no rational connection between the award and the evidence, indicating that it is merely a product of the jury's fevered imaginings or personal vendettas; and (3) whether the award is roughly comparable to awards made in similar cases." *Adams*, 798 F.3d at 543. The first two factors are really just asking whether the jury's verdict was irrational. *Id.* at 543.

While the award in this case was high, it was not irrational. There was ample evidence of Hakim's pain and suffering at the time of the incident. The Court recalls that Hakim's own testimony was compelling, and he served as an effective advocate for his own injuries and damages. He testified that being struck by the breaching round felt like getting hit in the back with a sledgehammer. Spinal surgery was necessary to remove the fragments of the round, and the surgeon was only able to remove most of them. Hakim testified the projectile had torn through the dura, which contains the spinal cord and fluid. Because the wound was so large, it could not be stitched, and was instead patched. Because of the patch, Hakim had to lay motionless on his back in the hospital for 48 hours. After he was discharged, his wound became infected and had to be debrided. Hakim testified that, even today, he cannot stand up straight because of the pain it causes. His use of pain-killing opioids, although

prescribed, was limited because he was born with one kidney and was fearful of the effects of the drugs on that kidney.

The evidence also supported Hakim's future damages. Hakim testified that pain prevents him from sleeping more than a few hours each night, and that his ability to manage that pain with medication is limited due to the aforementioned underlying medical condition. Testimony from medical professionals described him as a "chronic back pain patient" and indicated he has continuing balance, reflex, and range of motion issues. Although Hakim continues to work in law enforcement, he is no longer able to do all the SWAT activities he was before the injury. He estimated that he would not be able to continue work on the SWAT team for more than a few years. There was certainly evidence that Hakim, who was very athletic before the incident, has maintained or attempted to maintain his fitness, but those attempts do not diminish the effects of the injury just described.

Safariland cites several cases involving back injuries with verdicts below the award here. But as it acknowledges, no two cases are identical, and Illinois courts are generally reluctant to compare cases when evaluating whether a damages award is excessive. *Richardson v. Chapman*, 676 N.E.2d 621, 628 (Ill. 1997). The Court will not impose an upper bound on damages here based on the decisions of other juries in other cases.

Finally, there is no indication the jury's award was based on personal vendetta against Safariland or other inappropriate considerations. Safariland cites to Hakim's counsel's examination of Hubbs and his commentary in closing argument as urging

the jury to adopt a punitive mindset when assessing damages. But counsel's questioning of Hubbs concerned the bases for his opinions and potential bias, common subjects of expert cross-examination. *See, e.g.*, *Venus v. Seville Food, LLC*, 2017 WL 2364192, at *17 (D.N.J. May 31, 2017). It is not improper or even unusual for counsel to seek to undermine an expert's credibility during trial.

Nor was counsel's closing argument so inappropriate as to warrant reversal. Such circumstances are very rare and raise concerns only if they influence the jury in a way that causes substantial prejudice to the opposing party. *Jones v. Lincoln Electric Company*, 188 F.3d 709, 730 (7th Cir. 1999). Reversal may be appropriate when the evidence at trial was overwhelmingly in favor of the non-moving party, but that was not the case here. *See id.* at 731. Furthermore, the Court instructed the jury that closing arguments were not evidence and that they should base their verdict solely on the evidence admitted in the case. Such an instruction mitigates any prejudicial effect of potentially improper remarks during closing. *Id.* at 732. Any prejudice was also lessened because of objections by Safariland's counsel to certain statements in Hakim's closing (most of which appear unrelated to damages), which the Court sustained and took as an opportunity to remind the jury that the evidence in the case controlled over any remarks made by counsel in closing. *See Battle v. O'Shaughnessy*, 2013 WL 3984463, at *6-7 (N.D. Ill. Aug. 2, 2013) (rejecting argument that statements in defense counsel's closing caused substantial prejudice to plaintiff notwithstanding multiple sustained objections). Hakim's counsel largely moderated

15

his remarks following these objections, and the Court does not find that the comments, individually or collectively, caused substantial prejudice to Safariland.

## Conclusion

For the reasons stated above, the Court grants Safariland's motion to strike Hakim's post-trial affidavits, [R. 255], but otherwise denies Safariland's motions for judgment as a matter of law, for a new trial, and for a reduction in damages under Federal Rules of Civil Procedure 50 and 59, [R. 205; R. 240]. Judgment is entered in favor of Hakim consistent with the jury's verdict.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: April 18, 2022